Mitchell Wade Baggett ("the husband") appeals from a judgment divorcing him from Katherine Mays Baggett ("the wife"). He alleges that the trial court erred with respect to the division of the marital property.
On February 25, 2002, the wife filed a complaint requesting a divorce from the husband. She asserted that the parties had been married since 1981, and she *Page 558 
asked the court to award her custody of the parties' two minor children, child support, alimony, and all the assets of the marriage. The trial court issued a temporary order awarding the wife the use of the marital home, temporary custody of the minor children, and child support in the amount of $136 per week until a final hearing could be held. The husband filed his answer to the wife's complaint after the temporary order was issued.
The trial court conducted a hearing on March 13, 2002; the parties consented at that time to dissolution of the marriage subject to all issues regarding the children and the marital estate being determined at a future hearing. The trial court entered an order on March 25, 2002, granting the parties joint custody of the children, with the mother having primary physical custody; the trial court also ordered an appraisal of the marital residence and set the remaining issues for a later hearing.
During that subsequent ore tenus hearing, the trial court received testimony and evidence offered by the husband and the wife. The evidence regarding the value of the marital home was as follows. The home was purchased in 1986 at a cost of $59,000, financed with a mortgage loan extended by Phoenix Federal. When the mortgage loan was refinanced in 1993 or 1994, the appraised value of the home was $64,000. The court-ordered appraisal stated that the fair-market value of the home was $78,000. Evidence also indicated that the home had an assessed value of $54,035 for ad valorem tax purposes. The remaining indebtedness on the mortgage loan was $27,455 at the time of the hearing.
Beginning in 1994 a gradual disparity in the parties' salaries began to occur. Before 1994, the parties each earned between $15,000 and $19,000 annually. From 1994 to 1997, the wife's annual wages from her employment as a service manager for a mobile-home manufacturer increased to $70,000. During the same period, the husband's annual wages from his employment as a store manager grew only to $27,000. At the time of trial, the husband was an assistant manager of a Piggly Wiggly grocery store, earning the gross salary of $1,947.83 per month with $40 per month withheld for dental insurance. According to the tax return filed by the couple in 2001, the wife earned approximately $72,000 during that year and the husband earned approximately $23,500.
In 1997, the wife was diagnosed with breast cancer. Although the wife continued working while receiving medical treatments, the husband testified that he removed much of his 401(k) retirement savings to make house payments and to pay bills. In 1999, the parties decided to remodel the marital home. The renovations were performed between 1999 and 2001; the wife presented checks to the trial court showing payments totaling $10,030 toward the cost of those renovations. The husband produced checks totaling $1,275 toward the costs of remodeling; he testified that he had performed much of the actual labor.
The husband testified that he and the wife had stopped having sexual relations sometime in 1999; the wife stated that her new job caused her a lot of stress, and she agreed with the husband that they had not had sexual relations in three years. The husband stated that he had been having an affair with a former co-worker since January 2001. He stated that he continued to live in the marital home for about one year after his wife learned of the affair and asked him to leave. The husband also stated that the parties had previously separated in 1993 when the wife allegedly had an affair with a co-worker; she denied having had an affair. *Page 559 
The wife testified that she had personally made the house payments and paid the majority of the family's bills beginning in January 2000 and continuing until the date of trial. The wife produced canceled checks indicating that she had made the monthly payments on the parties' mortgage loan from April 2000 through May 2002, paying a total of nearly $16,000 during that period. The trial court admitted other checks from the wife into evidence that indicated she had paid electric, telephone, gasoline, and miscellaneous store bills for the parties during the same period.
The husband asked to be awarded half of the equity in the marital home. The wife stated that the husband should receive only 10% of the equity in the home. The husband produced a list of personal property he wanted from the marital estate. The wife stated that she wanted all the furniture in the house, including the two pieces the husband had requested — a bedroom suite and the dining room suite. The husband also asked for a 1990 Ford truck; he testified that it was subject to no indebtedness and that only he had made payments to acquire it. The husband stated that the wife had made payments for one year on a new Mitsubishi Montero sport utility vehicle and that he had begun making payments on that vehicle in spring 2001.
The trial court entered a final judgment on June 21, 2002; that judgment awarded the wife the marital home and all furnishings and appliances within the home, except for 13 specific items of personal property that were awarded to the husband. The parties' vehicles were not mentioned. The husband filed a motion for a new trial, which the trial court denied on August 13, 2002. The husband appeals, asserting that the property division is inequitable in that it favors the wife, especially as to the marital home.
The well-established standard of review is that a divorce judgment based on ore tenus evidence is presumed correct. See Robinson v.Robinson, 795 So.2d 729 (Ala.Civ.App. 2001). Such a judgment will be reversed only where it is unsupported by the evidence so as to be plainly and palpably wrong. Id. at 733. On appeal the division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O'Neal v. O'Neal, 678 So.2d 161 (Ala.Civ.App. 1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court.See Golden v. Golden, 681 So.2d 605 (Ala.Civ.App. 1996).
When dividing marital property and determining a party's need for alimony, a trial court should consider several factors, including "`the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.'" Ex parte Elliott, 782 So.2d 308
(Ala. 2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129
(Ala.Civ.App. 1985)) (footnote omitted). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility, or where, as here, the trial court failed to specify the grounds upon which it based its divorce judgment. Ex parte Drummond,785 So.2d 358 (Ala. 2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App. 1998). It is well-settled that where a trial court does not make specific *Page 560 
factual findings, the appellate court must assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. Ex parte Fann, 810 So.2d 631 (Ala. 2001); Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996).
In this case, the property division clearly favors the wife. The trial court's judgment does not indicate its reasons for awarding the husband so little from the marital estate. We note that fault in causing the breakdown of the marriage is one factor the trial court may consider in fashioning its property division and alimony award. See Ex parteDrummond, supra. However, the trial court made no finding of fault regarding either party's conduct contributing to the breakdown of the marriage. Furthermore, even if the recent monthly mortgage loan payments and the bulk of the recent renovation costs were actually paid by the wife, those facts do not justify a failure to award the husband a share of his contributions to the marital assets acquired during 21 years of marriage. The marital residence was purchased jointly in 1986 and was "used regularly for the common benefit of the parties during their marriage." See § 30-2-51(a), Ala. Code 1975.
We would not need to scrutinize the property division so closely if the trial court had awarded the husband more of the other marital assets or even alimony to compensate him for contributing to the marital estate. The husband references this court's decision in Courtright v.Courtright, 757 So.2d 453 (Ala.Civ.App. 2000), as authority supporting his position that the trial court abused its discretion by failing to award him a share of the equity in the marital residence. In that case, the parties had been married for 30 years and the wife's salary was only half of the husband's salary. The trial court awarded over 80% of the assets to the husband, while evenly dividing the marital debts between the two parties. In Courtright, we concluded that based on the length of the marriage and the disparity in the parties' incomes, the property division was inequitable.
Although "[a] court has no fixed standard to follow in awarding alimony or in dividing marital property," Ex parte Elliott, 782 So.2d at 311, in this case, the husband's annual salary is barely one-third of the wife's annual salary. Both the husband and the wife work full-time to support themselves and their two children. While ore tenus evidence indicated that the wife had been making the mortgage payments for at least 18 months preceding the divorce, this fact is apparently more a reflection of the wife's increasing salary; it does not negate the need to divide equitably the marital residence's equity between the parties.
Although we are mindful of our Supreme Court's admonition that an appellate court should not substitute its judgment of the facts for that of the trial court, Ex parte Smith, 673 So.2d 420, 422 (Ala. 1995), when we view the trial court's judgment in light of the factors outlined in Exparte Elliott, supra, we conclude that the trial court abused its discretion in determining that the wife should receive all of the equity in the marital home. We reverse the trial court's judgment and remand the cause to the trial court for the entry of a judgment equitably dividing the marital property, including the equity in the marital residence. The wife's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED.
Yates, P.J., and Crawley, and Thompson, JJ., concur.
Murdock, J., dissents. *Page 561